**Allen SCHLEIN, M. D.**

v.

**The MILFORD HOSPITAL.**

**Civ. No. N–74–169.**

United States District Court,
D. Connecticut.

Nov. 6, 1974.

John J. Coughlin, Milford, Conn., for plaintiff.

Stephen E. Ronai, Milford, Conn., Jeremy G. Zimmermann, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

NEWMAN, District Judge.

This motion to dismiss requires determination of the contours of state action in the context of a hospital's decision to deny staff privileges to a physician. Plaintiff Allen Schlein is a physician and orthopedic surgeon licensed to practice medicine in Connecticut. He maintains offices in Bridgeport and Milford and is Chief of Orthopedics at Bridgeport's Park City Hospital. Two other Bridgeport hospitals have granted him staff privileges. Plaintiff's practice in the Milford area led him to apply for staff privileges at defendant Milford Hospital, a "private" institution, at least in the sense that it is not owned or operated by a governmental subdivision. After a long series of proceedings the hospital rejected plaintiff's application. Thereafter he brought this action under 42 U.S.C. § 1983, claiming that the hospital had reached its decision without due process of law and in an arbitrary and capricious manner.

Defendant's motion to dismiss raises the jurisdictional issue of whether the hospital's activities are state action to which Fourteenth Amendment limitations apply. Plaintiff alleges state action on a number of grounds that were considered and rejected in Barrett v. United Hospital, 376 F.Supp. 791 (S.D. N.Y.1974). In an extensive opinion Judge Bauman properly recognized that under this Circuit's exacting view of

state action, neither receipt of Hill-Burton funds nor comprehensive state regulation of hospitals is sufficient to impose Fourteenth Amendment limitations on decisions to deny staff privileges. See also Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020 (S.D.N.Y.1971). However, the *Barrett* decision did not consider the significance of the State's activity in licensing both hospitals and doctors. Plaintiff alleges circumstances, which, if proved at trial, would establish that the hospital's role in relationship to both licensing systems constitutes state action.

Connecticut requires a license for anyone wishing to "establish, conduct, operate or maintain" a hospital. Conn.Gen. Stat. § 19–33. Among the factors to be considered in issuing licenses is the "demonstrable need for such institutions." Conn.Gen.Stat. § 19–36. The State thus determines whether there will be hospitals and how many there will be in a particular area. To date, only the defendant hospital has been licensed in the Milford area.

With respect to physician licensing, Connecticut, like other states, requires doctors to obtain a license before becoming eligible to practice medicine. Conn. Gen.Stat. § 20–8 et seq. While Dr. Schlein's license permits him to practice medicine anywhere in the State, the nature of his profession and, according to his complaint, of his specialty, requires that he enjoy staff privileges at a hospital in order to deliver the full range of services that he is licensed to perform. By deciding whether to extend staff privileges, hospitals determine important aspects of the scope of a physician's license. This determination has substantive and, in this case, geographic implications. The decision to grant staff privileges is quite unlike a hiring decision whereby candidates compete for a limited number of opportunities. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Moreover, the denial of staff privileges may seriously damage a physician's "standing and associations" in his pro-

fessional community. *Id.*, 408 U.S. at 573, 92 S.Ct. 2701. To the extent that plaintiff's Milford patients require treatment at a hospital, the denial of staff privileges at the only licensed hospital in the area limits the geographic scope of his physician's license. *Cf.* Foster v. Mobile County Hospital Board, 398 F.2d 227 (5th Cir. 1968).

This is not a situation where a private entity has denied a prerequisite to obtaining a state license, such as a law school's decision to withhold a diploma required for bar membership. *Cf.* Grafton v. Brooklyn Law School, 478 F.2d 1137 (2d Cir. 1973).

■ It may well be that the Fourteenth Amendment does not limit the procedures for decision-making by every entity that enjoys a degree of state-authorized monopoly. Compare Moose Lodge v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), with Lavoie v. Bigwood, 457 F.2d 7 (1st Cir. 1972). There are a variety of contexts in which a State determines who is permitted to carry on a particular form of enterprise, and it is not infrequent for State authority to confer limited geographic monopolies. The grant of such authority, for example, to liquor outlets or truckers, does not invariably impose Fourteenth Amendment limitations on their activities generally, nor on their hiring of personnel. Nor are such limitations applicable to all decisions made by those with some capacity to affect the activity of a state-licensed professional. A country club's decision not to admit a lawyer or an accountant may well have some limiting effect upon the scope of a professional practice, without incurring due process limitations.

■ In this case, however, a private hospital, by virtue of its state licensing, has been given the authority to determine important aspects of the scope of the license required of a physician. State-authorized power is being used to determine the scope of state-created rights. Moreover, this is occurring in the context of a geographic monopoly

that underscores both the significance of the hospital's power and the impact upon the physician's rights. A private entity cannot play such a pivotal role in the implementation of the State's regulatory authority without abiding by the procedural limitations that the Fourteenth Amentment imposes upon state action. The complaint sufficiently pleads state action to resist a motion to dismiss.

The remaining issues have been dealt with in a memorandum of decision made available to counsel for the parties.