No. 92-332

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LEONARD E. VAINIO, as the Personal
Representative of the Estate of
HELEN MARIE VAINIO,

       Petitioner and Appellant,

  v.

CANDI BROOKSHIRE and THE MONTANA
HUMAN RIGHTS COMMISSION,

       Respondents and Respondents.

FILED

MAY 13 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Mark P. Sullivan, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Kevin E. Vainio, Attorney at Law,
Butte, Montana

      For Respondents:

          Leonard J. Haxby, Attorney at Law, Butte,
Montana (Brookshire); David Rusoff, Human
Rights Commission, Helena, Montana

              Submitted on Briefs:  January 14, 1993

                       Decided:  May 13, 1993

Filed:

—————————————————
          Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Leonard Vainio, acting as personal representative of Helen Marie Vainio's estate, appeals the decision of the Second Judicial District Court, Silver Bow County, affirming the order of the Montana Human Rights Commission (HRC) finding that Helen Vainio's employee/supervisor committed sexual harassment against respondent Candi Brookshire, and the HRC's damage award of $20,000 to Brookshire for emotional distress.

We affirm.

Appellant presented 11 issues for this Court's consideration. We rephrase and consolidate the issues as follows:

1. Does § 49-2-506(1)(b), MCA, of the Montana Human Rights Act violate the Montana Constitution because the Act's procedural provisions do not allow for a jury trial?

2. Does § 49-2-506(1)(b), MCA, constitute an unlawful delegation of judicial and legislative powers?

3. Did the District Court err in finding that Helen Vainio was properly notified of the complaint?

4. Did the District Court err in finding Helen Vainio liable on the basis of respondeat superior?

5. Did the District Court err in upholding the HRC's ruling striking part of appellant's witnesses and exhibits?

6. Did the District Court err in holding that the Workers' Compensation Act does not provide a remedy for sexual harassment?

7. Did the District Court err in affirming the HRC's award of $20,000 in emotional distress damages?

2

8. Did the District Court err in affirming the HRC's decision not to allow the HRC's investigative report into evidence?

On September 2, 1988, Brookshire filed a complaint with the HRC against Harvey Phillips and the Silver Slipper, a lounge and casino located in Butte. On September 19, 1988, Brookshire amended her complaint, alleging that she was sexually harassed by Phillips during her employment at the Silver Slipper prior to being fired on June 2, 1988. During the time of the sexual harassment, the Silver Slipper Bar was owned by Helen Vainio, who is now deceased. The Silver Slipper has since been sold to Silver Slipper, Inc.

On September 5, 1989, the matter was certified for hearing and Phillips, Brookshire, and Silver Slipper, Inc., were all properly served with notice. On April 12, 1990, a contested case hearing was held in Butte. In her findings of fact, and conclusions of law, and order, the hearing examiner concluded that Phillips unlawfully sexually harassed Brookshire and that Helena Vainio, as owner of the Silver Slipper, was liable for the harassment. Silver Slipper, Inc., was found not liable. Appellant filed exceptions with the HRC to the hearing examiner's findings. On March 29, 1991, the HRC issued its order affirming the hearing examiner's order. Appellant appealed the HRC's opinion and order to the District Court. A hearing was held on December 30, 1991, and on May 12, 1992, the District Court issued its order affirming the HRC. Appellant appeals from the District Court order.

3

Appellant did not file a transcript of the contested case hearing for this Court to review, but did provide this Court with a transcript of the District Court's hearing.

I.

Does § 49-2-506(1)(b), MCA, of the Montana Human Rights Act violate the Montana Constitution because the Act's procedural provisions do not allow for a jury trial?

Appellant contends § 49-2-506(1)(b), MCA, unconstitutionally denied Helena Vainio's right to a jury trial. A legislature's enactment is presumed constitutional. Ingraham v. Champion International (1990), 243 Mont. 42, 47, 793 P.2d 769, 772. A party challenging the constitutionality of a statute has the burden of proving it unconstitutional beyond a reasonable doubt. Romero v. J & J Tire (1989), 238 Mont. 146, 149, 777 P.2d 292, 294.

We have held that the Montana Human Rights Act does not unconstitutionally deny persons the right to a trial by jury. Romero, 777 P.2d at 296. Prior to enactment of the Civil Rights Act of 1991, which creates a statutory right to a trial by jury under Title VII where there is a claim for compensatory or punitive damages, there was no right to trial by jury under Title VII. Slack v. Havens (9th Cir. 1975), 522 F.2d 1091, 1094. In Romero, we stated that legislative bodies may assign adjudication of statutory rights to administrative agencies in which a jury trial would be incompatible without violating the Seventh Amendment. Romero, 777 P.2d at 296. Through its enforcement of the Human Rights Act, the HRC protects the State's interest in eliminating

4

discrimination. Appellant failed to prove beyond a reasonable doubt that the administrative contested case procedures under the Human Rights Act unconstitutionally denied Helen Vainio's right to a jury trial. We hold that Helen Vainio was not unconstitutionally denied a jury trial.

## II.

Does § 49-2-506(1)(b), MCA, constitute an unlawful delegation of judicial and legislative powers?

Appellant asserts that § 49-2-506(1)(b), MCA, which allows the HRC to award damages in discrimination cases, constitutes an unconstitutional delegation of authority by the legislature. Appellant asserts that the HRC has "unbridled authority" to award damages. Section 49-2-506(1)(b), MCA, grants the HRC the discretion to award "reasonable" damages. Parties to contested cases before the HRC have the right to judicial review of all final HRC orders pursuant to § 2-4-702, MCA. The HRC damage awards must be reasonable and they are reviewable in district court under an abuse of discretion standard. The HRC does not have unbridled authority to award damages. We hold that § 49-2-506(1)(b), MCA, does not constitute an unlawful delegation of judicial and legislative powers.

## III.

Did the District Court err in finding that Helen Vainio was a party to the action?

Appellant asserts that Brookshire failed to name Helen Vainio in her complaint to the HRC as required by § 49-2-501(1), MCA, and

5

24.9.209(2), ARM. Section 49-2-501(1), MCA, states the following requirements for bringing an action against a party:

> A complaint may be filed by or on behalf of any person claiming to be aggrieved by any discriminatory practice prohibited by this chapter. The complaint must be in the form of a written, verified complaint stating the name and address of the person . . . alleged to have engaged in the discriminatory practice and the particulars of the alleged discriminatory practice.

The complaint listed Phillips and the Silver Slipper as respondents and stated the proper address and telephone number of the Silver Slipper. The complaint alleged unlawful discriminatory practices occurring throughout Brookshire's employment at the Silver Slipper. There is no requirement that a complaint filed under this statute name the individual owner of a business.

Appellant also contends that Helen Vainio was not promptly served with Brookshire's harassment complaint. Section 49-2-504, MCA, requires the HRC to informally investigate discrimination complaints filed with the Commission. Helen Vainio was aware of Brookshire's complaint three months after Brookshire was fired. Appellant has not provided this Court with additional evidence to show otherwise. Helen Vainio was properly served in this instance. We hold that the District Court did not err in finding that Helen Vainio was properly notified of Brookshire's complaint and was a party to this action.

IV.

Did the District Court err in finding Helen Vainio liable on the basis of respondeat superior?

6

Section 49-2-303(1)(a), MCA, provides that it is unlawful for an employer to discriminate based on sex. Unlike the comparable federal law, Title VII of the Civil Rights Act of 1964, the Montana Human Rights Act does not include an agent of the employer in the definition of "employment." Section 49-2-101(8), MCA; 42 U.S.C. § 2000e(b) (1964). In employment discrimination proceedings before the HRC, only the employer is potentially liable for discriminatory acts of its agents. The Equal Employment Opportunity Commission has exclusive jurisdiction under Title VII over any claim against a manager. Under the theory of respondeat superior, employers are liable for the intentional sexual harassment in which supervisory personnel engage in the course of their employment. E.E.O.C. v. Hacienda Hotel (9th Cir. 1989), 881 F.2d 1504, 1515. As a result of respondeat superior liability, a sexual harassment complaint need not specify acts committed personally by the employer. All that is needed to make Helen Vainio subject to the administrative proceeding is for Brookshire to allege that Phillips, an agent of Helen Vainio, committed unlawful sexual discrimination. We hold that the District Court did not err in concluding that Helen Vainio was liable on the basis of respondeat superior.

## V.

Did the District Court err in upholding the HRC's ruling striking part of appellant's witnesses and exhibits?

Administrative Rule 24.9.317(4), permits the hearing examiner or HRC to limit the prosecution or defense of a contested case if a party fails to comply or engage in discovery. This Court has

7

held that the imposition of sanctions for failure to comply with discovery is regarded with favor. Huffine v. Boylan (1989), 239 Mont. 515, 517, 782 P.2d 77, 78. An appropriate sanction is the limitation of proof to matters disclosed through discovery. Vehrs v. Piquette (1984), 210 Mont. 386, 393, 684 P.2d 476, 480. Any last minute tender of relevant documents will not cure the discovery problem. Dassori v. Roy Stanley Chevrolet Co. (1986), 224 Mont. 178, 728 P.2d 430. We will not overturn a trier of fact decision as to the determination of an appropriate sanction absent an abuse of discretion. Dassori, 728 P.2d at 432.

According to the minute entry of the hearing examiner, during a prehearing conference on March 21 and 22, 1990, the attorneys in this case were ordered to exchange their list of witnesses, contentions, and copies of exhibits, and revise a final prehearing order. Previous to this prehearing conference, appellant's counsel failed to participate in the preparation of the prehearing memorandum or file any separate addendum for the March 21, 1990, conference. The conference was continued to the following day to give appellant's counsel the opportunity to prepare his additions and discuss them with Brookshire's counsel. Brookshire's counsel did not receive appellant's witness or exhibit lists until April 9, 1990, and did not receive copies of appellant's proposed exhibits until April 11, 1990. Appellant's counsel hand-delivered his documents to the HRC offices on Monday, April 9, 1990, at 5:05 p.m. Based on appellant's failure to disclose the proper documents and witnesses, the hearing examiner struck the items from the final

8

prehearing order. We hold that the District Court did not err in upholding the HRC's ruling striking part of appellant's defense.

VI.

Did the District Court err in holding that the Workers' Compensation Act does not provide a remedy for sexual harassment?

Appellant argues that Brookshire's exclusive remedy for damages for emotional pain and suffering is under the Workers' Compensation Act, and not under the Montana Human Rights Act. The Workers' Compensation Act provides the exclusive remedy for physical injuries on the job. Section 39-71-119, MCA, defines injuries covered by the Act. The statute provides that personal injuries covered by the Act include "internal or external physical harm to the body . . . caused by an accident." Section 39-71-119(1)(a) and (2), MCA. Brookshire's complaint did not allege internal or external physical injuries to her body. Sexual harassment is an intentional act not arising from an accident. We hold that the Workers' Compensation Act is not an exclusive remedy for Brookshire's claim.

VII.

Did the District Court err in affirming the HRC's award of $20,000 in emotional distress damages?

Section 49-2-506(1)(b), MCA, delineates the forms of relief which the HRC may order if it finds that a person has engaged in unlawful discriminatory practices. The order issued by the HRC may:

[R]equire any reasonable measure to correct the discriminatory practice and to rectify any harm, pecuniary or otherwise, to the person discriminated against . . . . [Emphasis added.]

Section 49-2-506(b)(1), MCA.

Appellant contends that the HRC's award of $20,000 for emotional distress was clearly erroneous. We do not agree. The District Court found that Phillips's conduct toward Brookshire included, among other things, brushing his body against her buttocks, putting his hand up her skirt, grabbing her breasts, and requesting Brookshire to have sex with him. The statute provides that the HRC may order any reasonable measure to correct or rectify any harm. This includes emotional distress damages. The HRC's award of $20,000 in emotional distress damages was not clearly erroneous. We hold that the District Court did not err in upholding the HRC's award of $20,000 in emotional distress damages.

VIII.

Did the District Court err in affirming the HRC's decision not to allow the HRC's investigative report into evidence?

Finally, appellant contends that there was evidence contained in the HRC's investigative file which would establish that Helen Vainio was not made a party to the action. As we stated previously, Helen Vainio was properly noticed and is a party to this action.

We affirm the decision of the District Court.

_William E. Hunt_
Justice

10

We concur:

_J. A. Turnage_
_____
Chief Justice

_John Conway Harrison_
_____

_Karla M. Gray_
_____

_____

_R. C. McDonough_
_____

_____
Justices

11

Justice Terry N. Trieweiler, concurring in part and dissenting in part:

I concur with the majority's conclusions under Issues II through VIII of the majority opinion. However, because I conclude that compensatory damages for emotional distress are recoverable under § 49-2-506(1)(b), MCA, I also conclude that either party had a right to demand a jury trial of that issue pursuant to Article II, § 26, of the Montana Constitution, which provides in part that "[t]he right of trial by jury is secured to all and shall remain inviolate."

We have previously held that "[t]he right to trial by jury in this state is the same as that guaranteed by the Seventh Amendment [to the United States Constitution]." (Citation omitted.) *Linder v. Smith* (1981), 193 Mont. 20, 23, 629 P.2d 1187, 1189. While I do not agree that the right to trial by jury under Montana's Constitution should be limited by federal interpretations of the United States Constitution, I conclude that even on the basis of those decisions, appellant had a right to a jury trial of the damage issue in this case.

The majority relies on our prior decision in *Romero v. J & J Tire* (1989), 238 Mont. 146, 777 P.2d 292. However, in that case compensatory damages were not at issue, and the court correctly looked to federal case law interpreting Title VII of the Civil Rights Act of 1964 to determine whether a jury trial was guaranteed under Montana's Human Rights Act. In that case, we held that:

12

> This Court has stated that in discrimination cases under the Human Rights Act, it is helpful to look to federal law under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. [§]§ 2000e, et seq. *Snell v. Montana-Dakota Utilities Co.* (1982), 198 Mont. 56, 62, 643 P.2d 841, 844. . . .
>
> "When Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be 'preserved' in 'suits at common law.'"

*Romero*, 777 P.2d at 296.

However, our holding in *Romero* must be reexamined for several reasons. First of all, compensatory or legal damages for pain and suffering were not an issue in Romero. Second, the federal case law relied upon in *Romero* was decided before the 1991 amendments to Title VII of the Civil Rights Act of 1964. Prior to those amendments, the only relief provided for under the enforcement provisions of the Federal Civil Rights Act was equitable relief. *See Curtis v. Loether* (1974), 415 U.S. 189, 94 S. Ct. 1005, 39 L. Ed. 2d 260. The District Court could enjoin the conduct complained of, order reinstatement of the effected employee, with or without back pay, or grant any other equitable relief that the court deemed appropriate. *Curtis*, 415 U.S. at 197. However, in 1991, 42 U.S.C. § 1981a(a)(1) was added to the Federal Civil Rights Act to provide:

> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C. 2000e-5, 2000e-16] against a respondent who engaged in unlawful intentional discrimination . . . and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief

13

authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C. 2000e-5(g), 2000e-16], from the respondent.

When the Act was amended to allow for compensatory or punitive damages, it was also amended to provide that:

> If a complaining party seeks compensatory or punitive damages under this section --
>
> (1) any party may demand a trial by jury . . . .

42 U.S.C. § 1981a(c) (1991).

Because the Federal Civil Rights Act did not provide for general compensatory damages prior to 1991, the federal cases decided prior to the amendment that were relied upon by the majority are no longer instructive. A more helpful decision on this issue is the United States Supreme Court's decision in *Curtis*. In that case, the Supreme Court was asked to decide whether parties had a right under the Seventh Amendment to trial by jury of claims brought pursuant to Title VIII of the Civil Rights Act of 1968 (42 U.S.C. § 3612 (1968)). The fair housing provisions of that Act allowed federal courts to grant relief, including actual damages and punitive damages. In that case, the petitioner sought actual and punitive damages based on her allegation that the respondents had refused to rent an apartment to her because of her race. Respondents made a timely demand for jury trial. However, the district court held that a jury trial was not authorized under Title VIII of the Civil Rights Act, and neither was it required by the Seventh Amendment. The Seventh Circuit Court of Appeals reversed on the issue of respondents' right to a trial by jury, and the Supreme Court affirmed. In doing so, the Court held that:

14

But when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.

We think it is clear that a damages action under § 812 is an action to enforce "legal rights" within the meaning of our Seventh Amendment decisions. See, *e.g.*, *Ross v. Bernhard*, [396 U.S. 531,] 533, 542; *Dairy Queen, Inc. v. Wood*, [369 U.S. 469,] 476-477. A damages action under the statute sounds basically in tort--the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law.

More important, the relief sought here--actual and punitive damages--is the traditional form of relief offered in the courts of law.

*Curtis*, 415 U.S. at 195.

The Court then went on to distinguish between actions brought pursuant to Title VIII, which provided for actual and punitive damages, and actions brought pursuant to Title VII, which at that time allowed only reinstatement and back pay which the Court characterized as equitable remedies.

As in *Curtis*, the rights enforced by Brookshire in this case were ultimately enforceable in a court of law. *See* § 49-2-505(4), MCA; § 49-2-508, MCA; § 49-2-509(1)(a) and (b), (3), (5) and (6), MCA.

This issue has been previously decided by the State of Alaska in *Loomis Electronics Protection, Inc. v. Schaefer* (Ala. 1976), 549 P.2d 1341. In that case, Schaefer sued Loomis for discriminatory hiring practices. Loomis moved for a jury trial, which was denied. The

15

Alaska Supreme Court observed that the constitutional guarantee of trial by jury in Alaska was similar to that found in the Seventh Amendment to the Constitution of the United States. Furthermore, it found that the statutory prohibition against discriminatory hiring practices in Alaska was similar to Title VII of the Civil Rights Act of 1964. It acknowledged that federal cases at that time had concluded that the relief provided for under Title VII of the Federal Act was equitable in nature and that there was, therefore, no right under the United States Constitution to trial by jury of those claims. However, it distinguished the Alaska statute in the following manner, which is relevant to this case:

> Title VII of the Federal Act contemplates *only* equitable relief. No such limitation is found in the language of AS 22.10.020(c). After authorizing the superior court to enjoin illegal activities, through the application of its traditional powers of equity, the legislature of Alaska went on to authorize the court to order *any other relief, including the payment of money.* The language of the statute is clearly intended to provide a litigant complete relief in an appropriate case. . . . We believe the broad language of AS 22.10.020(c) indicates a legislative intent to authorize an award of compensatory and punitive damages for violations of AS 18.80, in addition to the equitable remedies such as enjoining illegal employment activities and ordering back pay as a form of restitution.

*Loomis*, 549 P.2d at 1343.

After discussing the U.S. Supreme Court's decision in *Curtis*, the Alaska Supreme Court went on to conclude that:

> Similarly, in the instant case, where part of the relief sought is compensatory and punitive damages, we believe that Article I, § 16, of the Constitution of Alaska, guarantees the parties the right to a jury trial. Accordingly, the order of the superior court, striking petitioner's demand for a trial by jury, should not have been entered.

16

*Loomis*, 549 P.2d at 1344.

Likewise, the damages authorized by § 49-2-506(1)(b), MCA, and awarded in this case are the traditional form of relief offered in courts of law. Whether claiming such damages or defending against a claim for damages, the Montana Constitution, in Article II, § 26, and the Seventh Amendment to the United States Constitution, guarantee the right of either party to trial by jury. If such a fundamental constitutional right can be evaded by simply delegating the initial determination of such damages to a state agency other than a district court, then the constitutional right to trial by jury is rendered meaningless. And, if the right to trial by jury is rendered meaningless for the employer in this case, then no one's right to trial by jury is secure from legislative interference in the future. This result was never intended by the authors of the Montana Constitution, nor the founding fathers when they drafted the Bill of Rights to the United States Constitution.

The right to trial by jury is the most fundamental protection in our state and in our country against tyranny by judges, legislators, bureaucrats, and other governmental officials. I conclude that, under the facts in this case, appellant was denied that constitutional right and that Brookshire's claim, while otherwise fully supported by the record, should be remanded for a jury trial on the issue of compensatory damages.

_____
Justice

17

May 13, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


KEVIN E. VAINIO
Attorney at Law
27 West Park Street
Butte, MT  59701


Leonard J. Haxby
Attorney at Law
P.O. Box 3008
Butte, MT  59702-3008


DAVID M. RUSOFF
Human Rights Commission
P.O. Box 1728
Helena, MT  59624


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy